UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| LYNN C., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:17-cv-00449-LEW |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff Lynn C.'s application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

## The Administrative Findings

The Commissioner's final decision is the November 9, 2016, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 6-2.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review the decision (R. 1), the Acting Commissioner's final decision is the ALJ's decision.

claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of "other and unspecified arthropathies," diabetes mellitus, peripheral neuropathy, and dermatitis. (ALJ Decision, R. 26, 29, ECF No. 6-2.) In her step 2 discussion, the ALJ concluded that Plaintiff has several non-severe impairments, including carpal tunnel syndrome and psoriatic arthritis.[2] (R. 27 – 29.) Based on her review of Plaintiff's symptoms[3] and the medical evidence, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work, occasionally push or pull with the right upper extremity, and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but cannot climb ladders, ropes, or scaffolds, or perform overhead work with her right extremity.[4] (R. 29.)

Based on the RFC finding, Plaintiff's age on the date of hearing (52 years), Plaintiff's education and vocational background, and the testimony of a vocational expert, the ALJ determined that Plaintiff is capable of performing past relevant, sedentary work as an appointment clerk in a call center. (R. 35.) Accordingly, the ALJ found Plaintiff was

---

[2] The ALJ also found that Plaintiff's report of fibromyalgia is unpersuausive because, given the record evidence, fibromyalgia is not a medically determinable impairment, and that Plaintiff does not have any medically determinable mental impairment. Plaintiff has not challenged either assessment in her Statement of Errors.

[3] Plaintiff asserts she is totally disabled by diabetes, arthritis, fibromyalgia, neuropathy, chronic pain in the back, neck, shoulder, legs, knees, and hands, bilateral numbness in her extremeities, fatigue, lack of manual dexterity, and medication-related fog. (R. 30 – 33; Hr'g Tr., ECF No. 6-2.)

[4] In support of her RFC finding, the ALJ gave "greatest weight" to the expert medical opinions of reviewing physicians acting on behalf of Disability Determination Services. (R. 35.) Based on her review of the record, the ALJ discounted Plaintiff's subjective complaints, a third party report by Plaintiff's former spouse, and medical opinions offered by two providers and a consultative examiner. (R. 33 – 34.)

not disabled through the date of the ALJ's decision, and denied Plaintiff's claim. (R. 35 – 36.)

## Standard of Review

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff argues the decision is not supported by substantial evidence because the ALJ erroneously found that psoriatic arthritis and carpal tunnel syndrome are not severe impairments. Plaintiff observes that appropriate consideration of the limitations associated with the conditions (specifically, Plaintiff's ability to handle objects) would rule out a return to past relevant work, and that a restriction to sedentary work would dictate a finding of disabled under Defendant's Medical-Vocational Guidelines.

At step 2 of the sequential evaluation process, a claimant must demonstrate that he or she has impairments that are "severe" from a vocational perspective, and that the

3

impairments meet the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). The step 2 requirement of "severe" impairment imposes a de minimis burden, designed merely to screen groundless claims. *McDonald v. Sec'y of HHS,* 795 F.2d 1118, 1123 (1st Cir. 1986). An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, to constitute a severe impairment, the impairment must have more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.*

At step 2, medical evidence is required to support a finding of severe impairment. 20 C.F.R. § 404.1521. See also Social Security Ruling 96-3p ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s).") (citation omitted). A diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity. *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014). Moreover, severe impairments may be deemed non-severe through the ameliorative influence of medication

4

and other forms of treatment. *Parsons v. Astrue*, No. 1:08-cv-218-JAW, 2009 WL 166552, at *2 n.2, *aff'd*, 2009 WL 361193.

   **A. Carpal tunnel syndrome**

The ALJ found the impairment related to Plaintiff's carpal tunnel syndrome was not severe because Plaintiff's physical examinations were "negative for limitation of motion, atrophy, decreased strength, and upper extremity motor, sensory, or reflex loss." (R. 28, citing Exs. 1F, 3F, 4F, 5F, 16F.)

Arthur Scott, M.D., a consultative examiner, assessed a decreased ranged of motion in both wrists and a loss of strength in the right hand. (Ex. 5F, R. 295 – 96.) Additionally, an EMG report prepared by Christopher Hughes, M.D., reflects "prolonged distal latency and "mild to moderate" (left) and "moderate" (right) "slowing through the carpal tunnel." (Ex. 1F, R. 247.) The findings, however, do not necessarily establish that the condition has more than a miminal impact on Plaintiff's ability to perform basic work activities. The overall record, including the absence of a surgery recommendation, Plaintiff's July 2016 report to Dr. Hughes that numbness in her hands is better when she wears her braces (Ex. 16F), Dr. Hughes' related, recent neurology exam, which fails to identify any motor limitations in Plaintiff's hands, and the assessment of Tom Dees, M.D., a consultative expert, who found no limitations caused by carpal tunnel syndrome,[5] contains substantial

---

[5] Plaintiff believes Dr. Dees overlooked the EMG report in Exhibit 1 and that the ALJ assessed the severity of carpal tunnel syndrome on her own. (Statement of Errors at 2 – 3.) However, the record reviewed by Dr. Dees included both the Hughes EMG study and Dr. Scott's report. In fact, the reconsideration decision that contains Dr. Dees' opinion specifically states that the record contains an earlier finding of "superimposed mild to moderate carpal tunnel syndrome." (Ex. 3A, R. 93.) In the explanation portion of his RFC opinion, Dr. Dees stated that the record contained "[n]o confirmation of carpal tunnel syndrome." (R. 96.)

evidence in support of the ALJ's determination that Plaintiff's carpal tunnel syndrome is not a severe impairment.

## B. Psoriatic arthritis

The ALJ recognized that rheumatologist Brian Keroack, M.D., diagnosed psoriatic inflammatory arthritis in 2008 (Ex. 13F), but questioned the significance of the diagnosis because the symptom at the time was limited to "a swollen finger on the right hand, and not on serologic findings." (R. 27.) The ALJ concluded that other references to the diagnosis merely reflect that the diagnosis continued in the medical history, but the record since 2008 includes no other documented joint swelling and/or synovitis, or other supportive diagnostic findings. (*Id.*)

Plaintiff argues the more recent records reinforce and demonstrate the significance of the diagnosis, which records include the consultative exam of Dr. Scott (Ex. 5F), a January 20, 2015 progress note from Leonic Temken, M.D. (Ex. 4F:1), and an October 30, 2015 progress note from Steven Petrin, N.P. (Ex. 10F:2). Plaintiff also contends Disability Determination Services consulting physicians did not review all of the relevant medical records related to psoriatic arthritis, specifically Dr. Keroack's diagnosis and Nurse Practitioner Petrin's progress note. Plaintiff further argues that both the consultative examiner, Dr. Scott, and Plaintiff's provider, Christine Sullivan, M.D., would impose restrictions related to handling and lifting based on the arthritis. (Statement of Errors 2.) Finally, Plaintiff notes that Dr. Keroack found she was allergic to the preferred medications. (*Id.*; Ex. 13F.)

Plaintiff alleges an onset of disability in August 2014. (Fact Sheet, ECF No. 8.) The ALJ permissibly concluded that Plaintiff had failed to demonstrate that the 2008 diagnosis for psoriatic arthritis in her right hand was a severe impairment in the relevant time period. First, the mere fact Dr. Keroack diagnosed the condition in 2008 is insufficient, without more, to support the conclusion of a severe impairment. The evidence that supports the ALJ's determination consists of the October 2015, expert opinion of Dr. Dees, who reviewed the medical record, including Dr. Keroack's diagnosis, for Disability Determination Services and specifically noted there was "[n]o confirmation of arthritis in hands" and that "[t]he actual findings of arthritis are minimal in knees, nonexistent in hands."[6] (Ex. 3A, R. 95.) Moreover, although Plaintiff has an allergy to the preferred medication, there is no evidence to suggest medication was not beneficial, and Plaintiff denied joint pain or swelling in April 2016. (Ex. 15F, R. 399.)[7] None of the evidence compels a determination that the psoriatic arthritis had more than a minimal impact on Plaintiff's ability to perform work activities. In short, the ALJ's finding that Plaintiff's psoriatic arthritis is not a severe impairment is supported by substantial evidence on the record.

---

[6] Dr. Dees also considered the consultative examination report of Dr. Scott, including his "poor" prognosis for Plaintiff's polyarthritis. (Ex. 5F, R. 298.)

[7] The record of Igor Prokopiw, M.D. listed psoriatic arthritis as part of Plaintiff's "past medical history," not as part of her "history of present illness." (Ex. 15F, R. 397 – 98.) Dr. Prokopiw also noted the absence of a skin rash or discoloration typically associated with psoriasis. Similarly, in 2013 a pain clinic provider noted that Plaintiff "has a history of psoriatic arthritis which has been primarily managed with pain medications." (Ex. 4F, R. 277.)

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 6th day of November, 2018.